COMMONWEALTH of Massachusetts,
Plaintiff,

v.

Louis M. SULLIVAN, M.D., Secretary of the United States Department of Health and Human Services, et al., Defendants.

Civ. A. No. 89–1213–T.

United States District Court,
D. Massachusetts.

Sept. 22, 1992.

Walter M. Foster, Atty. General's Office, Boston, Mass., for plaintiff.

Annette Forde, U.S. Attys. Office, George Eng, Dept. of Health and Human Services, Boston, Mass., for defendants.

## MEMORANDUM

TAURO, Chief Judge.

### I

### BACKGROUND

The Commonwealth of Massachusetts ("Commonwealth") seeks reimbursement from the United States Department of Health and Human Services ("HHS") for payments made into a pension reserve fund during fiscal years 1985 and 1986.[1] The Commonwealth alleges an underrecovery of $32.2 million in federal funds. The HHS Division of Cost Allocation ("DCA") disallowed these payments, and the Departmental Appeals Board ("DAB") subsequently upheld the DCA's decision. *See* DAB Decision No. 1034 (April 6, 1989). At issue is the Commonwealth's appeal from that decision.

The Commonwealth has traditionally operated its pension system on a pay-as-you-go basis. Under this approach, the state makes pension payments directly from its current funds, rather than from a previously funded reserve. During the 1970s, Commonwealth officials grew concerned about the state's unfunded pension liability. Responding to this concern, the Legislature established a pension reserve, and began to move away from a pay-as-you-go system

---

1. The Commonwealth used these payments to calculate a proposed fringe benefit rate on federally-supported projects for fiscal years 1987 and 1988. Federal law permits states to recover such expenditures, provided they are made in pursuance of specified guidelines. *See* United States Office of Management and Budget Circular No. A–87 ("OMB A–87") (containing the principles to be used in determining the allowable costs of activities conducted by state governments).

toward a fully-funded pension system. The amount in the reserve is intended to cover the future costs of pension payments to employees. When a state employee retires, that amount, together with earnings thereon, is used to pay the employee's pension.

In 1985, the Governor filed legislation that would have created a fully-funded pension plan for the Commonwealth. The Legislature rejected this plan, but continued efforts to eliminate the state's unfunded pension liability by appropriating $64.25 million in fiscal year 1985 and $167.5 million in fiscal year 1986.[2]

The DAB permitted only partial reimbursement of the Commonwealth's 1985 and 1986 payments into the pension reserve, concluding that

> Massachusetts was officially on the pay-as-you-go pension system at the time the disputed contributions were made and that DCA was reasonable in concluding that claims for pension plan contributions in excess of those sanctioned by that official system could not be [included in] federally reimbursable pension costs for [1985 and 1986].

DAB Decision No. 1034 at 1. The DAB allowed only those costs which were claimed as pay-as-you-go payments to currently eligible retirees.

The DAB's decision rested on three grounds. First, it ruled that allowable pension costs are "limited to those based either on a fully funded system, or on a pay-as-you-go system," and that "[t]hese systems are mutually exclusive." *Id.* at 6. Second, the DAB concluded that the Commonwealth was on a pay-as-you-go system, and that the payments in question were not allowable under that system because they exceeded the amount owed to current retirees. *Id.* at 8. Third, the DAB ruled that the Commonwealth's payments were not allowable costs under a fully-funded system because the payments were not "in accordance with a recognized, official system" and not "based on an accounting

method that uses an acceptable actuarial method." *Id.* at 8, 9.

The parties' cross-motions for Summary Judgment are before the court.

## II

### SUBJECT MATTER JURISDICTION

Although the defendants have abandoned their earlier challenge to this court's subject matter jurisdiction, *see* Defendants' Mem. at 7, the court, nevertheless, addresses this threshold question. *See Ezekiel v. Jones Motor Co.*, 377 F.Supp. 273, 274 (D.Mass.1974) (Julian, J.) ("[I]t is [a federal district court's] duty to inquire into its jurisdiction even when no party questions jurisdiction.") (citations omitted).

■ When a grant-in-aid dispute concerns only money past due, and no statute specifically authorizes a suit in district court, the Tucker Act, 28 U.S.C. § 1491, dictates that the case can be heard only in the United States Claims Court. *Commonwealth of Mass. v. Secretary of Health & Human Services*, 816 F.2d 796, 799–800 (1st Cir.1987), *rev'd in part on other grounds sub nom. Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). But, when a grant-in-aid dispute concerns a legal question that has a "significant, prospective effect on the ongoing relationship between the federal agency and the affected state," the Administrative Procedure Act ("APA") grants the district court jurisdiction to provide injunctive and declaratory relief. *Id.* at 800 ("The district court may not, however, consider the claim for money past due.").

■ The present dispute falls within the prospective effect category. Under the heading "Requests for Relief," the Commonwealth asks this court to:

> 1. Enjoin the Secretary and the Director of DCA from failing or refusing to allow the Commonwealth to include in its statewide cost allocation plans for fiscal years 1987 and 1988 the full amounts of

---

2. In 1987, the Commonwealth passed the Massachusetts Pension Reform Act, which requires the Commonwealth to eliminate its unfunded pension liability by June 30, 2028. Mass.St. 1987, ch. 697, § 76 (codified at Mass.Gen.L. ch. 32, § 22C).

its pension liability costs in fiscal years 1985 and 1986;

 2. Set aside the Board's Decision No. 1034; and

 3. Grant such declaratory and other relief as the Court deems just.

Complaint at 7. While a request for declaratory relief should not be used to create otherwise nonexistent district court jurisdiction over a claim for "money damages," 5 U.S.C. § 702, no subterfuge is evident here.[3]

The mere fact that the Commonwealth hopes ultimately to obtain federal funds does not deprive this court of jurisdiction over the present action.[4] *Bowen v. Massachusetts,* 487 U.S. 879, 893, 108 S.Ct. 2722, 2731, 101 L.Ed.2d 749 (1988), *aff'g in part and rev'g in part Commonwealth of Mass. v. Secretary of HHS,* 816 F.2d 796 (1st Cir.1987) ("The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.' "). Indeed, as the Supreme Court has noted, "the nature of the controversies that give rise to disallowance decisions typically involve state governmental activities that a district court would be in a better position to understand and evaluate than a single tribunal headquartered in Washington." *Id.* at 907–08, 108 S.Ct. at 2739.

Having concluded that it properly has subject matter jurisdiction over this case, the court now turns to its review of the DAB's decision.

### III

### REVIEW OF DAB'S DECISION

█ This court's review of the DAB's decision is governed by the APA, which authorizes a reviewing court to set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2)(C). While this court "cannot substitute its own judgment for that of the agency," *Conservation Law Found., Inc. v. Secretary of the Interior,* 864 F.2d 954, 958 (1st Cir.1989) (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)), it must be assured that the DAB's decision was based on relevant factors. *Id.*

Under the HHS regulatory scheme, OMB A-87 governs the federal reimbursement of costs incurred by state governments in administering federally-funded programs. *See* 45 C.F.R. § 74.170–74.171. OMB A-87 provides that state contributions to a defined-benefit pension plan are includible in a statewide cost allocation plan, provided such contributions are made in a timely manner, are "reasonable" in amount according to an actuarial study based on generally accepted accounting principles, and do not impose a disproportionate burden on federally-assisted programs. OMB A-87 ¶ B.13.b; HHS Grants Administration Manual ("GAM") § 6–30–30.

Plaintiff contends that the DAB erred when it concluded that the Commonwealth could not recover pension payments under a transitional "hybrid" system—i.e., one combining both the pay-as-you-go approach and the fully-funded approach. The Commonwealth argues that, instead of applying a *per se* exclusion to those payments, the DAB should have determined whether they were "necessary and reasonable." [5]

---

3. Distinguish *Bio–Medical Applications of Lewiston, Inc. v. Bowen,* 677 F.Supp. 51 (D.Mass. 1987) (Keeton, J.), in which the "[p]laintiffs' complaint [did] not articulate a claim for relief with significant prospective effect." *Id.* at 54.

4. "[T]he willingness of the sovereign to subject itself to suit ... turns on what the suit will require the sovereign to do, rather than why the suit was brought...." *Commonwealth of Mass. v. Secretary of Health & Human Services,* 816 F.2d at 800 n. 1 (1st Cir.1987).

5. The Commonwealth further asserts that the DAB's decision "represents an illegal federal intrusion on state autonomy," Plaintiff's Mem. at 20, and will force states "either (1) to continue to fund their pension systems on a pay-as-you-go basis, or (2) to bear themselves a disproportionate share of pension costs." *Id.* at 19 (footnote omitted).

Defendants contend that the DAB's decision was correct as a matter of law. Like plaintiff, they point out that costs are allowable only if they are "necessary and reasonable for proper and efficient administration of the grant programs." OMB A–87 ¶ C.1.a. Unlike plaintiff, they argue that "the combined costs of a so-called hybrid system ... are not necessary and reasonable for proper and efficient administration." Defendants' Mem. at 9. They claim that

> Under a pay-as-you-go system, only pay-as-you-go costs are necessary and reasonable. Under a fully-funded system, only actuarially determined costs are necessary and reasonable. Pay-as-you-go costs are not necessary and reasonable under a funded system. Payments to reserves are not necessary and reasonable under a pay-as-you-go system. The two systems are in fact mutually exclusive.

*Id.* In essence, then, the resolution of this dispute turns on whether the Commonwealth's costs in 1985 and 1986 were "necessary and reasonable for proper and efficient administration of the grant programs." OMB A–87 ¶ C.1.a.

## IV

### "NECESSARY AND REASONABLE"

The term "necessary" must be considered "in the connection in which it is used, as it is a word susceptible of various meanings." Black's Law Dictionary 928 (5th ed. 1979). Here, it is used in conjunction with the term "reasonable," which is commonly understood to mean "[f]air, proper, just, suitable under the circumstances" and "[f]it and appropriate *to the end in view.*" *Id.* at 1138 (emphasis added). In this context, "necessary" imports not "absolute physical necessity or inevitability," but rather "that which is ... appropriate, suitable, proper, or conducive *to the end sought.*" *Id.* at 928 (emphasis added).

While these definitions in and of themselves do not dictate the result in this case, they do suggest that the DAB's inquiry

into the necessity and reasonableness of plaintiff's costs should have taken full account of the relevant context. The Commonwealth found itself between the equally hazardous alternatives of a pay-as-you-go pension system, fraught with enormous unfunded liabilities, and a more costly fully-funded system. In its attempt to move from the former to the latter, it unwittingly entered an administrative abyss which, according to defendants, fell outside the purview of an acceptable statewide cost allocation plan.

In most instances, defendants' vision of a bipolar administrative world would be a reasonable expectation. Some states would operate under a pay-as-you-go system. Others would choose a fully-funded system, and never the twain would meet. But, the defendants' reliance on a wooden, pigeonholed analysis ignores the reality that a state might decide, as did the Commonwealth, to switch from one system to the other. During such a transition, a state's pension system will invariably take on "hybrid" characteristics.

The requirement that costs be "necessary and reasonable" does not support defendants' conception of two mutually exclusive categories, neither of which could include the Commonwealth's pension payments in 1985 and 1986. Such an elevation of form over substance would run counter to the "fundamental premise" that each state government is "responsible for the efficient administration of grant and contract programs through the application of sound management practices." OMB A–87, ¶ A.2.a. Surely, the Commonwealth's comprehensive efforts to eliminate its unfunded pension liability were, and continue to be, consistent with that responsibility.

 In deciding whether or not to allow the costs of the Commonwealth's "hybrid" system in 1985 and 1986, the DAB should have taken into account the nature of those costs and, more importantly, the Commonwealth's ongoing efforts to reform its pension system.[6] Because it did not adequate-

---

**6.** Costs must be "accorded consistent treatment through application of generally accepted ac-

counting principles *appropriate to the circumstances.*" OMB A–87 ¶ C.1.e. (emphasis added).

480

ly address these considerations, the DAB's decision is reversed.

This court does not intimate a view on whether or not the Commonwealth is entitled to a full reimbursement of the funds at issue. Indeed, "the more imbricated a matter, the more cautious a reviewing court should be about attempting to resolve the issue itself." *Rhode Island Higher Educ. Assistance Auth. v. Secretary, U.S. Dep't of Educ.*, 929 F.2d 844, 857 (1st Cir.1991). Guided by this principle, this court will refrain from "launching a free-wheeling judicial inquiry" into whether or to what extent the Commonwealth should be reimbursed. *Id.* That determination is better left to the DAB on remand.

## V

### CONCLUSION

For all of the foregoing reasons, the court hereby denies defendants' motion to dismiss, or in the alternative, for summary judgment. Plaintiff's motion for summary judgment is allowed. The court reverses the decision of the DAB and remands this case for action consistent with this opinion.